UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON

**LARRY GENE COOPER,**

      **Plaintiff,**

v.                                                      **CIVIL ACTION 2:14-cv-28158**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

Pending before this Court is Plaintiff's Brief in Support of Motion for Judgment on the Pleadings (ECF No. 10), Brief in Support of Defendant's Decision (ECF No. 11) and Plaintiff's Reply to Brief in Support of Defendant's Decision (ECF No. 12).

Background

Larry Gene Cooper, Claimant, protectively applied for Disability Insurance Benefits (DIB) under Title II and Part A of Title XVIII of the Social Security Act on June 27, 2011 (Tr. at 184-191) and Supplemental Security Income (SSI) on October 28, 2011 (Tr. at 193-219), alleging disability in both applications beginning on March 30, 2011. Claimant's applications were denied initially and upon request for reconsideration (Tr. at 73, 81 and 88). Claimant filed a written request for a hearing on October 11, 2011 (Tr. at 98-99). In his request for a hearing before an Administrative Law Judge (ALJ), Claimant stated that he disagreed with the determination made on his claim for SSI Disability/Title II benefits because the decision was contrary to the medical evidence and D regulations (Tr. at 98). Claimant appeared in person and testified at a hearing held via video teleconference on April 16, 2013. The Claimant and his attorney were in Beckley, West

Virginia and the ALJ was in Charleston, West Virginia (Tr. at 32-62). On September 24, 2013, Claimant appeared in person and testified in a supplemental hearing via video teleconference. Again, Claimant and his attorney were in Beckley, West Virginia and the ALJ was in Charleston, West Virginia (Tr. at 63-69). In the Decision dated September 26, 2013, the ALJ determined that based on the application for a period of disability and disability insurance benefits, Claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act. Further, based on the application for supplemental security income, Claimant was not disabled under section 1614(a)(3)(A) of the Social Security Act (Tr. at 13-26). On October 14, 2013, Claimant filed a Request for Review of Hearing Decision of the ALJ because the ALJ's decision was contrary to the medical evidence and regulations (Tr. at 7). On September 19, 2014, the Appeals Council denied Claimant's request for review (Tr. at 1-5). The Appeal Council stated that it considered the Claimant's reasons for disagreeing with the decision, the additional evidence that was submitted, and whether the ALJ's action, findings, or conclusions were contrary to the weight of the evidence of record. The Appeals Council "found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. at 1-2).

On November 14, 2014, Claimant brought the present action requesting this Court to review the decision of the Defendant and that upon review, it reverse, remand or modify that decision.

Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12

months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2014). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2014). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since March 30, 2011, and meets the insured status requirements through June 30, 2016 (Tr. at 15). Under the second inquiry, the ALJ found

3

that Claimant suffers from the severe impairments of cardiomyopathy (alcohol induced), left ventricular dysfunction, status post implantable cardioverter defibrillation implant, chronic obstructive pulmonary disease (COPD) and history of alcohol abuse (Tr. at 16). At the third inquiry, the ALJ concluded that Claimant did not have an impairment or combination of impairments that met or medically equaled the level of severity of any listing in Appendix 1 (Tr. at 18). The ALJ then found that Claimant has a residual functional capacity to perform light work[1] (Tr. at 19). As a result, the ALJ determined that Claimant is not capable of performing his past relevant work (Tr. at 23). The ALJ concluded that Claimant could perform jobs such as a marker, photocopy machine operator and apparel stock checker (Tr. at 24 - 25). On this basis, benefits were denied.

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan,* 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless,

---

[1] The ALJ ordered that Claimant had the residual functional capacity to perform light work except he can occasionally balance, stoop, kneel, crouch, crawl and climb. He can tolerate frequent exposure to extreme heat and cold. He can tolerate occasional exposure to hazardous conditions, including unprotected heights and moving machinery. He is able to perform simple, routine tasks. He requires sit/stand option at will while remaining on task (Tr. at 19).

the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner in this case is not supported by substantial evidence.

## The Medical Record

The Court adopts the medical record findings asserted by Claimant and Defendant as follows:

> Cooper presented to Charleston Area Medical Center (CAMC) General Hospital on September 8, 2010 with reports of left lower quadrant abdominal pain and nausea and vomiting over the previous week in addition to shortness of breath, weakness, and fatigue at admission (Tr. 342-387). A CT of the abdomen showed bowel wall thickening with inflammatory changes that were indicative of sigmoid diverticulitis (Tr. 343, 355-356). Cooper was hospitalized for seven days, and on September 9, 2010, an echocardiography revealed a 20 to 25 percent ejection fraction of the left ventricle as well as moderately increased ventricular wall thickness (Tr. 386-87). At that time, Cooper's cardiologist, Srinivasan Narasimhan, M.D., deferred performing a cardiac catheterization until Cooper's gastrointestinal issues had stabilized (Tr. 348, 435).
>
> On February 17 2011, Cooper again presented to CAMC with complaints of chest pain and calf cramps (Tr. 322-323). An electrocardiogram (EKG) showed multiple premature ventricular contractions (PVCs), and Cooper was transferred to the emergency room for consultation and admission (Tr. 329, 336-338). On February 21, 2011, Cooper underwent a left heart catheterization and ventriculography, which demonstrated a dilated left ventricle with an ejection fraction of 20 to 25 percent with global hypokinesis (Tr. 422-423). These results were interpreted as non-ischemic cardiomyopathy with an ejection fraction of 20 to 25 percent and a severely depressed left ventricular systolic function (Tr. 423). Dr. Narasimhan recommended aggressive medical therapy and alcohol cessation (Id.).
>
> On March 28, 2011, Cooper was evaluated by Dr. Ronald McCowan, an electrophysiologist, for the insertion of a

defibrillator (Tr. 484-485). Thereafter, on March 30, 2011, Cooper underwent a dual chamber ICD and lead insertion (Tr. 486). Approximately two months later, Cooper presented to CAMC with complaints of defibrillator shocks (Tr. 327-332). An EKG showed paroxysmal atrial fibrillation with rapid rate and occasional PVCs (Tr. 329- 330). Cooper confirmed he had stopped drinking and had reduced smoking (Tr. 330, 336-337).

During a follow-up visit on July 5, 2011, Dr. Narasimhan reported that Plaintiff had been recently admitted for defibrillator shocks secondary to rapid atrial fibrillation and that this had been corrected by controlling his ventricular rate with Tikosyn, and that his cardiac status appeared to be stable (Tr. 445). Dr. Narasimhan referred Plaintiff to the CAMC for his complaint of back pain and reported that he had prescribed Lisinopril, Lopressor, aspirin, Zocor, Coumadin, Tikosyn, and a Spiriva inhaler as needed (Tr. 445).

Plaintiff reported on July 12, 2011, after his defibrillator adjustment, that his daily activities included independent personal care, mowing the lawn for one hour a week (Tr. 249), driving, walking, and riding a bicycle, shopping in stores for food and clothes, and paying bills and handling a checking account (Tr. 250, 280). He was still able to pursue his hobby of woodworking (Tr. 251). He did some household repairs (Tr. 279). His social activities included "running around with others," camping, going to the mountains and to ball games (Tr. 251). He reported that he could lift 50 pounds, and that his heart condition limited his stair climbing and walking more than one quarter of a mile at a time without resting (Tr. 252). He said he could pay attention, finished what he started, and was able to follow written and spoken directions (Tr. 252). On a pain questionnaire that Plaintiff completed without assistance on October 25, 2011, he reported that he had not had any pain since his defibrillator was installed (Tr. 272-76).

On August 3, 2011, Dr. McCowan, who implanted Plaintiff's cardioverter defibrillator on March 11, 2011, completed a form for the state agency on which he indicated that Plaintiff had no exertional (lifting, walking/standing, and sitting) limitations from an electrophysiological standpoint (Tr. 476). Dr. McCown also indicated that Plaintiff had no postural (ability to climb ladders, ramps, or stairs, balance on even surfaces, bend stoop, kneel, crouch, or crawl) limitations from an electrophysiology standpoint (Tr. 476). Dr. McCowan further indicated that Plaintiff had no psychological limitations that would affect his ability to work (Tr. 476). Dr. McCowan found no cardiopulmonary limitations from an electrophysiology standpoint (Tr. 478).

On September 8, 2011, James Egnor, M.D., a state agency consulting internist, reviewed and summarized the medical evidence

6

(Tr. 457). Dr. Egnor noted that Plaintiff's cardiac function had improved, that he was having minimal symptoms, and could perform light work activity with some postural and environmental limitations (Tr. 451-455). On November 21, 2011, Narendra Parikshak, M.D., reviewed the evidence and noted that there was no new medical evidence to suggest any increased functional limitations (Tr. 555).

By January 11, 2012, Dr. Narasimhan had referred Cooper to Kurt Nelhaus, M.D. for a pulmonary evaluation due to an increased shortness of breath and significant wheezing (Tr. 557). Unfortunately, Dr. Nelhaus' treatment records are not available in the record. In a treatment note, dated June 12, 2013, Dr. Narasimhan observed Cooper's condition, including his symptoms of fatigue and weakness, to have worsened (Tr. 574). On August 1, 2013, Cooper presented to CAMC after having missed six doses of Tikosyn due to an authorization issue (Tr. 581). The medical record refers to an updated echocardiogram, dated June 12, 2013, which showed an ejection fraction of 35 to 40 percent; however, the EKG report was not available in the record (Tr. 582).

On June 12, 2013, Dr. Narasimhan, after examining Plaintiff and noting his complaints of fatigue and weakness, ordered a 2-D Echocardiogram (Tr. 574). The echocardiogram on June 12, 2013 revealed an ejection fraction of 35-40 percent (Tr. 582).

On July 12, 2013, Mustafa Rahim, M.D., at the request of the state agency, performed pulmonary function testing, reviewed Plaintiff's treatment records, and examined him (Tr. 558-63). The pulmonary function testing indicated a mild restrictive pattern (Tr. 562-63). On physical examination, Plaintiff had no symptoms of cardiac arrhythmia (Tr. 558). Plaintiff's extremities did not reveal any peripheral edema, clubbing, or cyanosis (Tr. 559). Plaintiff's neurological examination was normal (Tr. 559). Plaintiff's musculoskeletal examination was normal (Tr. 559). Plaintiff had full flexion of his lumbosacral spine and negative straight leg-raise testing (Tr. 560).

Dr. Rahim completed a Medical Source Statement of Physical Ability to Do Work-Related Activities on which he indicated that Plaintiff could frequently lift and carry up to 10 pounds, occasionally lift and carry up to 20 pounds, sit for eight hours a day, stand for six hours a day, and walk for two hours a day (Tr. 564-65). Dr. Rahim noted that Plaintiff had no limitation on the use of his hands or feet (Tr. 566). He found that Plaintiff could occasionally climb stairs and ramps, and had no limitations on the remaining postural activities of balancing, stooping, kneeling, crouching, and crawling, and had no environmental limitations (Tr. 567-68).

7

### Medical Opinions – August and September 2013 – Srinivasan Narasimhan, M.D., Cardiology

On August 1, 2013, Dr. Narasimhan saw Plaintiff at CAMC after Plaintiff had missed six doses of Tikosyn, which he took for control of atrial fibrillation (Tr. 581). Plaintiff had no complaints of fibrillation (Tr. 582). Dr. Narasimhan noted that Plaintiff's last echocardiogram on June 12, 2013 revealed an ejection fraction of 35-40 percent (Tr. 582). Dr. Narasimhan admitted Plaintiff to re-start the Tikosyn therapy (Tr. 584). Plaintiff had no chest pain or shortness of breath and his EKGs did not show any arrhythmia (Tr. 584). Dr. Narasimhan advised Plaintiff to stop smoking (Tr. 584).

In a letter dated August 19, 2013, Dr. Narasimhan provided a medical observation that Cooper still experienced shortness of breath with minimal exertion and had extreme fatigue (Tr. 572). He stated Cooper's echo results still showed severe left ventricular dysfunction (Id.). On September 25, 2013, Dr. Narasimhan clarified that due to Cooper's severe non-ischemic cardiomyopathy, he was unable to undergo a stress test (Tr. 592).

### Consultative Examination – July 12, 2013 – Mustafa Rahim, M.D., Internal Medicine

Dr. Rahim evaluated Cooper at the request of the State agency (Tr. 558-571). Dr. Rahim noted Cooper to have low pitched expiratory wheezes, but his report did not reveal any other physical abnormalities (Id.). Smoking cessation was recommended (Tr. 560).

Dr. Rahim completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical) (Tr. 564-570). Dr. Rahim did not provide a statement regarding whether Cooper's impairments met or equaled a listing (Id.). According to Dr. Rahim, Cooper could lift up to 20 to 30 pounds occasionally and 10 pounds frequently and could carry up to 20 pounds frequently (Tr. 564). He stated Cooper could sit up to eight hours, stand up to six hours, and walk up to one hour total in an 8-hour day (Tr. 565). Dr. Rahim provided Cooper could occasionally climb stairs and ramps, frequently climb ladders and scaffolds, and continuously perform all other postural activities (Tr. 567). Dr. Rahim also stated Cooper would experience shortness of breath with walking short distances (Tr. 569).

8

Medical Opinion – September 8, 2011 – James Egnor, M.D..

Dr. Egnor reviewed Cooper's file and completed a Physical Residual Functional Capacity assessment (PRFC) at the request of the State agency (Tr. 450-457). Dr. Egnor did not provide a statement regarding whether Cooper's impairments met or equaled a listing (Id.). According to Dr. Egnor, Cooper could lift and/or carry up to 20 pounds occasionally and 10 pounds frequently and could stand, walk, and/or sit up to six hours in an 8-hour day (Tr. 451). Dr. Egnor provided Cooper could occasionally perform all postural functions (Tr. 452). Dr. Egnor also stated Cooper must avoid concentrated exposure to extreme cold, extreme heat and hazards (Tr. 454). On November 21, 2011, Narendra Parikshak, M.D. affirmed Dr. Egnor's opinion (Tr. 555). (ECF Nos. 10-12).

Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ failed to comply with 20 C.F.R. §§ 404.1527 and 416.927 in assigning "no weight" to the opinion of his treating cardiologist, Dr. Narasimhan. Also, Claimant asserts the ALJ failed to properly evaluate his cardiac impairment in her step three evaluation (ECF No. 10). Defendant asserts that the ALJ properly complied with the regulations in finding that Claimant was not disabled because he did not meet Listing 4.02 for chronic heart failure (ECF No. 11). Defendant further asserts that the ALJ complied with the regulations in evaluating the medical source opinions, including the opinion of Dr. Narasimhan.

Discussion

At the conclusion of the initial hearing on April 16, 2013, the ALJ held the record open to allow Claimant time to submit additional evidence. Additionally, the ALJ requested that Claimant undergo a consultative physical examination. The ALJ admitted additional evidence into the record as Exhibits 8F - 10F at the supplemental hearing on September 24, 2013 (Tr. at 65). Claimant asserted "The item that we're lacking in terms of the evidence to meet the listing is the statement from the medical care provider saying that the performance of an exercise test would

9

present a significant risk to the individual" (Tr. at 66). Claimant asserted that Dr. Narasimhan wrote a letter dated August 19, 2013, that provided a copy of Claimant's examination and her opinion that Claimant "is considered totally disabled for any gainful employment" (Tr. at 66, 572). Claimant informed the Court that Dr. Narasimhan's letter left out whether or not the performance of an exercise test would present a significant risk to Claimant (Tr. at 66). Claimant stated that he had an appointment scheduled with Dr. Narasimhan the next day to ask him for that specific information, therefore, he asked the court to leave the record open for seven days to acquire and submit the information. The ALJ denied Claimant's request. (*Id.*) On September 26, 2013, the ALJ entered an order denying Claimant's applications (Tr. at 13-26).

Claimant appealed the ALJ's decision and submitted a medical document from Dr. Narasimhan as evidence. The medical document was a note written on a prescription pad by Dr. Narasimhan dated September 25, 2013, the day after the supplemental hearing. Dr. Narasimhan's note stated that Claimant "has severe non ischemic cardiomyopathy with low left ventricular systolic function. He cannot undergo any stress test" (Tr. at 592). On September 19, 2014, the Appeals Counsel admitted Dr. Narasimhan's note into the record as Exhibit 11F (Tr. at 4). The Appeals Council denied Claimant's request for review of the ALJ's decision stating the following:

> In looking at your case, we considered the reasons you disagree with the decision and the additional evidence listed on the enclosed Order of Appeals Council. We considered whether the Administrative Law Judge's action, findings or conclusion is contrary to the weight of the evidence of record. We found this information does not provide a basis for changing the Administrative Law Judge's decision. (Tr. at 1-3).

Additional evidence will be considered by the Appeals Council if it is new and material and relates to the period on or before the ALJ hearing decision. See 20 C.F.R. §§ 404.970(b) and 416.1470(b). SSA has issued HALLEX 1-3-3-6 to clarify when additional evidence is new and

material. According to the HALLEX, this means the evidence is:

1. Not part of the record as of the date of the ALJ decision;
2. Relevant, i.e., involves or is directly related to issues adjudicated by the ALJ; and
3. Relates to the period on or before the date of the hearing decision, meaning it is (a) dated before or on the date of the hearing decision, or (b) postdates the hearing decision but is reasonably related to the time period adjudicated at the hearing.

New evidence, which is first submitted to the Appeals Council, is part of the record which goes to the district court for review. This is true whether the Appeals Council reviews the case or not. *Keeton v. Department of Health and Human Services*, 21 F.3d 1064, 44 Soc. Sec. Rep. Serv. 248, Unempl. Ins. Rep. (CCH) (11th Cir. 1994).

In the decision, the ALJ held that Claimant's cardiac impairment does not meet or medically equal the criteria of section 4.02 of the Listings, as there is no evidence of a medically documented presence of one of the following:

A.  1. Systolic failure (see 4.00D1a(i), with left ventricular end diastolic dimensions greater than 6.0 cm or ejection fraction of 30 percent or less during a period of stability (not during an episode of acute heart failure); or,
2. Diastolic failure (see 4.00D1a(ii), with left ventricular posterior wall plus septal thickness totaling 2.5 cm or greater on imaging, with an enlarged left atrium greater than or equal to 4.5 cm, with normal or elevated ejection fraction during a period of stability (not during an episode of acute heart failure); and,
B.  Resulting in one of the following:
1. Persistent symptoms of heart failure which very seriously limit the ability to independently initiate, sustain or complete activities of daily living in an individual for whom an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that the performance of an exercise test would present a significant risk to the individual; or,
2. Three or more separate episodes of acute congestive heart failure within a consecutive 12 month period (see 4.00A3e), with evidence of fluid retention (see 4.00D2b(ii)) from clinical and imaging assessments at the time of the episodes, requiring acute extended physician intervention such as hospitalization or emergency room

>treatment for 12 hours or more, separated by periods of stabilization (see 4.00D4c).

It is not the role of the Court to search for evidence and articulate for the ALJ's decision which the ALJ himself did not articulate. *See Rhinehardt v. Colvin*, No. 4:12-CV-101-D, 2013 U.S. Dist. LEXIS 75948, 2013 WL 2382303, *2 (E.D.N.C. May 30, 2013) (citation omitted) ("If the ALJ fails to explain why an impairment does not meet the listing criteria, the decision is deficient."); *Tanner v. Astrue*, C/A No. 2:10-1750-JFA, 2011 U.S. Dist. LEXIS 105731, 2011 WL 4368547, *4 (D.S.C. Sept. 19, 2011) (stating "if the ALJ did not rationally articulate grounds for her decision, this court is not authorized to plumb the record to determine reasons not furnished by the ALJ"). In *Radford v. Colvin*, 734 F.3d 288 (4th Cir. 2013), the Fourth Circuit stated that a necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. "If the reviewing court has no way of evaluating the basis for the ALJ's decision, then 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" *Id.* (quoting *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744, 105 S. Ct. 1598, 84 L. Ed 2d 643 (1985)).

While the ALJ is required to weigh the relevant medical opinions, he "need not discuss every shred of evidence in the record," and is under no duty to explicitly refer to each exhibit. *Reynolds v. Colvin*, 2014 WL 2852242, at *21 (S.D. W.Va. Aug 19, 2014), *adopted by* 2014 WL 4852250 (S.D. W.Va. September 29, 2014; *McGrady v. Astrue*, 2011 WL 4828884, at *20 (N.D. W.Va. September 16, 2011) (quoting *Mays v. Barnhart,* 227 F. Supp. 2d 443, 448 (E.D. Pa. 2002), *aff'd* 78 F. App'x 808 (3d Cir. Oct. 27, 2003)) ("[t]he ALJ is not required to give an exhaustive discussion of all the exhibits. 'Consideration of all the evidence does not mean that the ALJ must explicitly refer to each and every exhibit in the record.'").

Listing 4.02

Claimant argues the following:

> [T]he evidence of record included EKGs and a heart catheterization, which revealed Cooper to have dilated cardiomyopathy severely depressed left ventricle systolic function with an ejection fraction of 20 to 25 percent of the left ventricle (Tr. 327-332, 336-338, 386-387, 422-423). The ALJ did not address why this objective medical findings and corresponding treatment notes were not sufficient to document Cooper's cardiac impairment met or equaled Paragraph A of Listing 4.02 for at least some portion of the relevant time period (Tr. 18-19). Instead, the ALJ referred to a statement within a treatment note that Cooper had an ejection fraction of 35 to 40 percent in June 2013 (Tr. 19, 582).
>
> Moreover, in regards to Paragraph B, the ALJ failed to allow Cooper's representative time to provide evidence that his medical provider advised against a stress test. The ALJ herself admitted in the decision that Cooper's representative requested the record be kept open for seven days for the submission of this evidence (Tr. 19). Notably, the supplemental hearing was held on September 24, 2013, and the ALJ issued her decision on September 26, 2013. Dr. Narasimhan's statement was dated September 25, 2013 and was submitted immediately to the ALJ on September 27, 2013 [Tracking No. 1415FF34284210E2 Date and Timestamp: 09/27/2013 at 11:04 AM EDT]. Thus, the ALJ closed the record and rushed the decision even with knowledge that evidence pertaining to whether Cooper met or equaled a listing was forthcoming. What is more, since neither the consultative examiner nor the non-examining State agency medical consultant provided an opinion regarding listing-level severity, the ALJ's finding at Step 3 apparently is based on her own opinion of the severity of Cooper's impairments. (ECF No. 10).

When read in combination with the applicable regulation, *Wilkins v. Secretary, 953 F.2d 93 (4th Cir. 1991),* reveals that a claimant need not show good cause when submitting new evidence to the Appeals Council:

> A claimant seeking a remand on the basis of new evidence under 42 U.S.C.A. § 405(g) (West 1983) must show that the evidence is new and material and must establish good cause for failing to present the evidence earlier. There is no requirement that a claimant show good

13

> cause when seeking to present new evidence before the Appeals Council.

*Wilkins*, 953 F.2d at 96 n.3; *see also* 20 C.F.R. § 416.1471(b) (2014). Instead, "[t]he Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review 'if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision.'" *Wilkins*, 953 F.2d at 95-96 (quoting *Williams,* 905 F.2d at 216.) Evidence is new "if it is not duplicative or cumulative." *Id.* at 96 (citing *Williams*, 905 F.2d at 216). "Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome." *Id.* (citing *Borders v. Heckler*, 777 F.2d 954, 956 (4th Cir. 1985)).

Claimant asserts that the ALJ failed to properly evaluate his cardiac impairments in her analysis. He argues that because the ALJ did not allow additional medical evidence relating to whether his impairments met or equaled the criteria of Listing 4.02, the ALJ's decision is unsupported by substantial evidence (ECF No. 10). Claimant requests this Court enter an order reversing the Commissioner's decision for an award of benefits or remand the matter for review.

The additional records were admitted into evidence by the Appeals Council. This Court must review the record as a whole, including the new evidence, to determine whether substantial evidence supports the ALJ's findings. The contents of the new evidence pertains directly to whether Claimant satisfies the criteria for Listing 4.02. Therefore, the ALJ's decision is not supported by substantial evidence as he has not reviewed the record as a whole.

The Court recommends that the presiding District Judge remand this matter for further consideration.

Conclusion

The undersigned proposes that the United States District Court remand this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings to consider whether Exhibit 11F, when reviewed with the entire record satisfies the criteria for Listing 4.02 .

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **GRANT** Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 10), **DENY** the Commissioner's Brief in Support of the Defendant's Decision (ECF No. 11), **REVERSE** the final decision of the Commissioner and **REMAND** this case for further proceedings pursuant to sentence four of 42 § U.S.C. § 405(g) and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED** and a copy will be submitted to the Honorable Judge Thomas E. Johnston.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Wright v. Collins*, 766 F.2d 841, 846 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d

91, 94 (4th Cir. 1984). Copies of such objections shall be served on opposing parties, Judge Johnston and this Magistrate Judge.

    The Clerk is directed to file this Proposed Findings and Recommendation and to transmit a copy of the same to counsel of record.

    Enter: January 29, 2016

_____
Dwane L. Tinsley
United States Magistrate Judge